Matthew Bazzapero on behalf of the appellants. Do you want me to begin my argument now? Please, yes. Thank you. Yeah, this is a comeback case. There has been numerous appeals on this and a remand, so there's a lot of briefing in this matter. The four primary issues to discuss are two reimbursement issues, reimbursement for housing, and under that category the appellant, Marcus High, has been staying at a separate day program, and he's been getting residential care, which is not in the IEP. So under the Guide of Union School, he would be entitled to or what Union School held was that if a student is located in a day program that is too far away to transport them back, that they're entitled to use. And you are doing this as both as a faith issue but also as a statehood issue? That's correct. Assuming we're talking about the statehood, how many years are we talking about? I filed in November of 2009, so it's been going on for three and a half years, so that would be But at some point there was a IEP at Loveland, right? There was an IEP in In 2010 or so? There was two IEPs that are being contested here. I know that. I'm asking you whether the state court was cut off at some point because of a settlement or an IEP or an agreement. Now, on this matter, this case involves the ---- I know what this case involves. I'm just trying to get a reality check about how many years of back pay or back reimbursement for the residential coverage we're actually talking about. And so my understanding is it goes back about to 2007, but it doesn't go forward much because there's a cutoff. There's a cutoff. Well, Loveland Academy quit providing housing in 2012. I know that. We've been with this case as long as you have, so let's assume we know what we're talking about, okay? My understanding is, and this is what I'm not sure about because it's not clear on the record, because I'm talking about a year that's not before us. It's later. All right? But from what I could read, what I understand, after the years that we're talking about, there was a placement, an official IEP placement at Loveland. Is that right? Yes. That's correct. Yeah. In that administrative due process hearing, 11-12. At that point, at that point, doesn't the State put get cut off? No. Why? Because this case has been, it's not terminated in decision. I understand. But my understanding is that the State put only goes for as long as there's not an agreed-upon placement, and there was one starting in 2010. In Joshua A., the Ninth Circuit determined that State put lasts as long as the case goes on. And this case has been going on since November of 2009. There's been no termination in this case. So there's been no final decision. Can I ask? Because there was an intermediate decision by Ms. Alm in 2000, I believe it was 2012, for the 11-12 school year. She also issued a State put order, but that is under the State put order of this matter. That State put order ended because the case was not appealed. So when this case ends, there will be no more State put. May I interject and just pursue the same line of questioning as Judge Berzon, because I'm not sure I have fully understood your answers. First, I'm going to say something that I think is right as a matter of law, and you can correct me if you disagree. Someone is subject to a State put order as a future IEP is being debated and litigated. But once a new IEP is agreed upon, the new IEP governs and there is no State put order. Is that correct? That is not correct. So there's a State put order even though there's now a new IEP that may have been someplace else? The new IEPs, you can amend an IEP during State put. There's no rule that an IEP cannot be amended or there can't be any other agreements to placement. And once there's an agreement to placement, that would become the last agreed upon placement. For purposes of State put, once you file the due process complaint, State put is, you know, the automatic injunction that occurs under the PDKC. But what you're saying just logically doesn't make sense, because once he was being – and the only reason this matters, and maybe we should drop it because it's kind of far down the road, but to get a reality check on how much money we're talking about, it would seem logical that – and I think this is the law, too – that once there is an official placement at that place, why are we doing a State put? It's already been taken care of. I mean, you're going to loop the official and agreed-upon determination with what – with this system that is designed only for interims? Yeah. This is an exceptional case, because it's been going on since 2009. I mean, these cases are supposed to be resolved in 45 days after the resolution session. Any intermeeting under Joshua 8, State put lasts until all appeals are finished. So if that's the rule, this is the last appeal. So the State put for the 2009 filing is going to last until this appeal is over. The intervening events have no effect on the automatic injunction of State put under 1415 sub J. So if the court – Except he wasn't there under State put starting in 2010. He was there under an IEP. He was there under State put and an IEP, under both. All right. But when they – when – You want to go on with your other argument? After this case rules, if there's no State put, the parent can file again the last time they agreed upon IEP was the hearing officer's decision. So there will be another State put if the parent files after this matter. The child is 20 years old now and is going to be ending his IDEA at the age of 22. But under the rubric of Joshua 8, that State put stays in effect until this matter ends. Did Joshua 8 deal with the situation in which there was an intervening IEP agreed upon? Did it deal with that situation? I'm asking you a specific question. Did Joshua 8 deal with that situation? The situation in which there was an intervening IEP? No, there was not. No, it didn't. Okay. Go ahead. The placement from Ms. Almalaceto for only one year after that, there's been another offer for the same program. So that – again, we're talking about the IEPs of 2008 and 2009. And the issues on those were whether or not the State or the DOE appellee made a valid offer of placement by stating that the placement is going to be in a school in his home community, which doesn't meet the standards of a union school, which says that the placement must be a written offer of an educational setting. Yeah. Assume that the written offer or proposal doesn't meet the standard. Is there a way around that if it's clear that the parties understood what was on offer? Under union school, the Court made it clear that it had to be specific to give the parents. So there'd be no question of placement. No, no, that's not my question. I'm assuming for purposes of my question that the written offer of placement was inadequate. Does that become, as it were, harmless error if it becomes – if it is clear that the parties actually understood what was being offered? Under union school, I would say not. The parties understood under the facts of that case. Are you saying – when you say – you would say not. You're saying that there's no escape hatch, or are you saying that if they had understood, that would be sufficient, but they didn't understand? Which are you saying? I would say there is no escape. There's no escape hatch. So it doesn't matter. So even if Karen understood perfectly that what was being offered was an IEP at Baldwin High School with everything that she was asking for, that doesn't – that doesn't cure the problem? That does not cure the problem. Well, let me ask this. In your view, what is the purpose of that requirement that the offer be in writing and that it be specific? What's the function of that offer? It functions so that the parent can participate in the decision-making of the placement. All right. So I think what Judge – all right. So I think what Judge Fletcher is asking is, well, in this case, didn't the parent participate? No. The parent did not participate in the decision-making process. That's one of the issues. Not at all? Not at all, no. She wasn't there? She wasn't at the meeting? She was at the meeting in 2008. This is when we're in due process and the State is strenuously arguing that Marcus belongs in a residential program. This is the case ending in 054 in front of Ms. Alm, where they're testifying to Ms. Alm that he belongs in a residential program. That decision came out in October of 2000. But that was with regard to a different year. Yeah. Wasn't there a finding by the administrative law judge in this case, the hearing examiner, that, in fact, she was there and they did discuss Bolton High School in some detail? The problem with that? You think that he shouldn't have accepted that there was a credibility problem. But there was a finding. She was on the phone. The discussion did not include an offer of fate in the least restrictive environment. Well, that's a different question. But the question of whether or not it was adequately discussed, that she understood what the discussion was, was there's a find. I'm asking you, try to answer the specific question instead of the one you'd like me to be asking, okay? Yes. Wasn't there a finding with regard to credibility that said that the what the DOE people testified to happened at that hearing, in fact, meeting, in fact, happened? Yeah. There's a so-called finding. But there was a reiteration of the testimony that the DOE testified. She was, in fact, telephonically at that meeting. I mean, she admits she attended the meeting. And she has a different version of what happened at the meeting than the other people at the meeting. Well, her version of the – her version is that there was no offer of fate. The DOE – But that's a different question. The question is – I assume what you mean, that there was no offer of fate, because the judgment is a substantive question, was this a good enough offer. But the question first is, was there an offer? Well, there was no offer. The – even the DOE's testimony states in the – it's in the appellee's Ms. Allville discussed that there was some – that on double hearsay, she heard that the schoolroom teacher was talking about transitioning Marcus to Baldwin, and that there was some discussion about Baldwin being offered under CFR – 34 CFR 300.116, under the LRE provisions of the IDEA. The – an offer of fate is made by a group of people, including the parent. It's a decision that has to be made. It's discussed on the LRE, and also must – it's based on the IEP, it's based on considerations of harmful effect. The parent must participate in that discussion. There is no evidence, no testimony that the parent participated in any of those discussions. The testimony includes that – that there is a transition or that they want Marcus to transition to Baldwin High School. There is no offer of a fate. But the prior written notice says – the prior written notice says Marcus educational placement is the public high school in his home community. That is not – yeah. That was the written offer. Right. And that doesn't substantiate the – the minimum requirements of union school, because there is no – But – and that isn't what they were talking about when they got to the meeting? They weren't talking about the educational placement as a public high school in his home community? At the meeting, that was not the – That was not discussed at the meeting. And so they – even the testimony from the DOE's witnesses doesn't substantiate that they made – that there was a discussion on the LRE and that the parent participated and that there was a decision by the IEP team. If the DOE proposes a placement, that's called predetermination. You cannot come to a meeting and say we are offering UX under 34 CFR 300-116. It's a meeting with a discussion of knowledgeable people about the student based on the LRE. That is you. Okay. You sit and you ask whether or not if you want mainstream, do you want fully self-contained? Okay. And then the team decides. That never happened at that meeting. At this point, you've used all of your time. Let's hear from the State. Okay. But we will give you time to respond. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Carter Hsu, Deputy Attorney General here on behalf of the Advocate League. Going back to one of the questions that was raised by Judge Breton, there was no official placement at Loveland at all in any IEP, even though there was an adverse finding against the Boulder High School. I thought the 2011, the document about the 2011, which, by the way, is not in the record. We don't have the later ones in the record. It would be helpful if we could. Sure. I mean, they're online, so they're judicially noticeable, but they're not judicially noticeable in a form that we could use them. But they said something about there being a 2010 placement. That's not right? I don't recall there being a 2010 placement. I recall the 2010 IEP not being challenged. The 2011 IEP was challenged. But I thought it was at Loveland. No IEP has placed him affirmatively at Loveland. What Mr. Bassett, I think, is talking about is an adverse decision against the DOE. In 2011. For the 2011 IEP. I believe it is the 2011 IEP. However, as we know from LM versus Capistrano, an adverse decision for reimbursement does not equate to educational placement. So in that case. What does that mean? Yes. There has to be specific findings that the Loveland Academy is the educational placement where he should be placed, where his IEP should be implemented, versus a finding that reimbursement is appropriate. Under a lower level, I believe it's the CB case where it says the, it sets out the reimbursement is appropriate if the private school has, provides special education that meets some but not all of its needs, and specialized services as well. So in this case, there was only an offer, an award of reimbursement, not an offer of placement. And not even an offer for. I mean, that means that, that, does that mean, therefore, that the original statehood is still in effect? I believe it is, because that terminated on its own terms. So that means that if we, so let's go back to basics then. Sure. You have taken the position, as I understand, you barely responded to the question whether the residential cost should be reimbursed as part of the statehood. You simply, you kind of just said very little about that, and it would be helpful. Sure. I mean, if that were true, then most of the rest of the case goes away, right? Well, there, there. You can't pay twice for the same thing. So if you had to pay. That's true. You can't pay twice, even though you tried. So if you had to pay for it to stay put, you wouldn't, all the FAPE stuff wouldn't matter for any, for any existing year. Well, there's still a question going forward, of course. I'm sorry, what? There's still a question about payment going forward after this case is done. The IAPs of 2012, 13, and 14 have never been challenged. I'm not sure if they've been challenged. Right. They've never been challenged, and they have never been challenged. They've never been challenged. So then we don't have to worry about it. Sure. So why do we need to worry about that? Well, on the issue of reimbursement, there's never been any affirmative decision or agreement by any party or court that has placed them, that has approved of the reimbursement. Correct. There hasn't been, but why not? Because they've never actually addressed it in the hearing. Well, they did very clearly before. I mean, it was raised clearly. Well, you say not. I don't think, to me, it was raised pretty clearly before the hearings and pretty clearly before the district court and pretty clearly here. Sure. I mean, but what we're talking about, State Court, is. Well, sure. Then somebody needs to decide it. No one's ever decided it. Well, the issue of State Court maintains placement. And when you filed this case, there was no maintaining of a residential component. See, when you look at State Court, you look at the time of filing, and at the time of filing, there was never any agreement for the residential component. In November 09. Yes. There was never an agreement to pay for his residential component. In fact, there's decisions. There's no agreement. What you're saying is that it can't be a State put because you never argued this. You never even argued that much of it. So you're at – is what you're saying is because he never was paid for the residential  Is that what you're saying? I think in my briefing, I set forth his attempts previously to obtain residential placement, and he's lost in every step. I said if it gives us – My understanding is he's lost once. He lost in State court once. And it was with regard to a different residential placement. Is that right? Yes. Mana House. But in that case, he lost – he first went to the State court, lost, appealed it. Right. Lost, and then at the same time, he went back to the DCCA, admin hearings officers, got a ruling in his favor. That was reversed by the USDC. That was appealed to the circuit and affirmed. Okay. That there was no residential. But that was a different – I mean, that was a different residential. Correct. It was a different question. Was it the same legal question or a different legal question? It's the same legal question in the sense that you have to answer – Why? I know in that instance that the Mana House residential placement was really not simply – it wasn't just a place where he would live when he went to Loveland. It purported to be itself a therapeutic program. That's what the issue was, no? But the thing is the same. There's been no agreement or court order saying that residential component is necessary for its educational needs. Never. Not before 2009, not since. So legally – let me see if I can understand what you're saying legally, okay? If he had a placement, a stay-put placement at Loveland Day School for the day, during the day, and if in general the regs say, as they do, as I understand it, that if you have to go to school someplace far from your house, you can't live there, then paying for living there is part of what you're entitled to. Is that correct, that much of it, generally speaking? I don't think that's generally speaking correct. If you physically – if you choose to go to a school far away from you and it's a school of choice, then no one has to pay for that separate residential. I'm assuming a stay-put order, which meaning he had a right to have you pay for him to be at Loveland until something else happened. Yes, but again, when you look at the – It would have been helpful if you briefed any of this. The problem is you didn't. So now we're making it all up while you're standing. You didn't brief any of the substance of this. The thing is most of the substance came in the reply brief. We have no chance to respond. I mean, the gist of what I'm arguing is at the time they fought in 2009, there was no residential component to have – to maintain going forward. Then if you get over that, the issue is there was no residential component unless he wins in this case and he proves that residential component is a requirement for an education. And that has not been – I don't think there's any evidence that it's a required education. Why do you say there was no – did you say in 2009 there was no residential component? There was no agreement or a court order validating the residential component being part of his educational program. So the resident – the IEP never had a residential component in it? Correct. And was that appealed to the court? Either court, State or Federal? In 2009. We're here today because there was a denial of the residential component. All right. So that's the issue now. But was there a residential component in the prior years? In the prior years, nobody agreed to the deal. We did not agree to pay for his residential component, regardless of where it was. And, again, in fact, in 2007 or 2008, this Court affirmed a decision saying that residential component was not part of his educational needs. And that was basically – But there was no residential component in the E.C.L.A.R.A. or Estoppel for a particular year? For that particular year? We never said substantively that it was. I mean, it can't – frankly, I don't understand how it couldn't be part of it. It doesn't make any – where was the kid supposed to live? Well, if he was – I understand you think he shouldn't have been going to the school. But if he was going to the school, where was he supposed to live? That is a parent's choice to pay for wherever he goes. I mean, every parent has a choice to put their child in any school they want. I understand that. But this was covered – the substantive part of it, the school, was covered by a straight-put order. Correct. Which means, then, that he's not being there placed at the parent's choice. He's being placed there pursuant to an obligation. Given that there's an obligation on the State to pay for the schooling at Loveland, that takes it out of the category into which you're trying to put it. So the question then becomes, given that there's an obligation for the State to pay for the education at Loveland pursuant to state put, the question is whether he's entitled, in addition to costs for the residents in that area, given that Loveland is on Oahu and the home is on Maui. Are we making sense at this point? Yeah, I understand. I understand. I would say no. There's no findings that, even though it would seem like the logical thing to do it, it's legally I don't think it is. Because you look at the maintenance of placement. State put is maintaining the placement. The placement, if it was Loveland and the residential, that would be maintained. But at the time he filed, it was only Loveland and not the residential component of it. Did the ALJ – I don't know if you'd call it, call it here, I understand. Sure. Or the district court ever decide what you're saying now? In this case, there was no decision. This was the first time it was ever raised, state put placement, state put residential placement. What's the first time it was ever raised? In this appeal. True. That is not true. I mean, in the November 09 notice, it's clear as day. It was never, to my knowledge, adjudicated as an issue. It wasn't adjudicated. That's what I'm asking you. Why wasn't it adjudicated when it was raised clear as day? I don't think it – well, I don't think it was argued that way. It was argued as a placement in the first instance. Let me ask it this way. I read in your red brief at pages 26 and 27 that you say, well, the question of expenses for residents associated with Loveland was never raised. Therefore, it's not properly in front of us. Assume for purposes of my question that we disagree, that it was properly raised in the district court, and it is now properly in front of us. Do you have any other defense to the award of expenses for residents while he's going to Loveland pursuant to state put? Any other? Besides the fact that he didn't raise it for purposes of my question, assume that he did raise it. Do you have any other defense? Other than what I said today, that it wasn't the placement in 2009 when he filed, all I can say is that in the Ojai case, O-J-A-I, in that case there was a school for deaf and blind. The student was deaf and blind. There was no appropriate public placement. So what happened is that the hearings officer found that the only appropriate educational placement was a residential placement, a private residential placement. Unfortunately, there was no beds there available. But because that was the only appropriate educational placement, he approved of housing as a related service. Right. In that instance. Yes. But that is after a decision that there's no other places in that area that could accommodate this kid. In this case, there's no finding that any place in Maui could not accommodate the student. And in fact no, no, you don't understand my question. Oh, go ahead, please. You aren't raising any kind of a preclusion as a defense, are you? In other words, that this case was or the issue was decided before and so the student is precluded from re-litigating the same issue about, you know, reimbursement for housing costs. I am not raising the preclusion because it is a different establishment. But I am saying that there's been no findings or argument at any level that this market source, we'll call it, is a required component of this educational program. Well, how can it not be? That is to say, the family lives on Maui. Loveland is on Oahu. Given the time necessary to travel between Maui and Oahu, it is impossible to have him go to school at Loveland during the day and to come home and sleep at Maui in the night. Therefore, comparable to Ojai, he needs some place on Oahu to spend the night, right? But at Ojai, there was no other alternatives. In this case, there are a plethora of alternatives on Maui. A plethora of educational alternatives? Yes. But you're ignoring the proposition that he's entitled to be at Loveland pursuant to this day put. So the fact that there may hypothetically be other places he could go to school on Maui is irrelevant for purposes of associated residential expenses because he's legally entitled to be at Loveland for school. But again, even in the previous case, which I'm not arguing it's issue preclusion and claim preclusion, where Mauna House was determined not to be an educational component, even then it was under a settlement agreement, and even then it said that they would pay for his education, and even then the Court said education did not include the residential component. They're separate. But you never said that. Sure. The State court and the district court never said that. But there has to be a finding that it's part of an educational component to be maintained. The November 2009 request for impartial due process hearing says, Marcus continues to attend local Loveland Academy per stay put. Additionally, a residential therapeutic living program has been created for Marcus by Loveland Academy. This allows him to remain in a least restrictive alternative. Judge Ezra stated in his decision that Petitioner is not exhausted as an administrative remedy on the issue of the responsibility of payment for these problems. Therefore, he raises them in this proceeding. That's not a sufficient raising of the issue? He didn't argue. He didn't submit any evidence on this under and there's no decision on this issue in the first place. Well, that's where there's no decision. I'm trying to say, you keep saying there's no decision, and that's true. There isn't one because nobody's ever given him an answer. But that doesn't answer the question of whether he's entitled to an answer. But that requires a finding that residential component is part of the educational component. That's true. That's true, and there's never been such a finding because for some reason nobody's ever bothered to answer the question. Meaning the hearing examiner or the district court. But it's not the fault of the jury. But it's the failure of the appellant to prove his case. In this case, when we said the Judge Ezra decision, he didn't do anything on that subject matter until the very end. And that is not the reason. When you look at educational placements, you look under the ---- And all the hearing examiner said was, well, he's not entitled to it as part of his faith, and therefore he's not entitled to the residential, but he never addressed the stay put. He just didn't address it. Well, we're here before on stay put, and that was for the applicability of stay put about a year and a half ago. And that issue of residential payment was not raised either. Because it wasn't pertinent at that point. Well, the pertinent question at that point was, is he entitled to stay put whatever it is? Again, stay put preserves the educational placement. The educational placement in 2009 did not include a residential component. You can't throw it in there because it has to be there, because where else is he going to live? Again, private placements are placements of choice sometimes. And in this case, it's a placement of choice. And when it's used, yes, you have a comment. I'm sorry. You've gone off the rails again, or at least I don't understand you to be staying on the rails. You say private placements are a matter of choice. What kind of placement are you now talking about? At Loveland Academy. But that was not pursuant to choice. He's there pursuant to a stay put. Not true. He can all, regardless if you're going to stay put or not, the parent always has a choice to move to a different school. But the parent is entitled to have him at Loveland pursuant to stay put. Isn't that right? Yes, entitled to, but it's not meaning that the mom cannot tomorrow decide, I'm going to move. But of course that's true for any educational placement. I mean, if the parent is entitled to an educational placement under the law, the parent can always take the child out. But that doesn't mean that the parent, because the parent can voluntarily take the child out of it, is not entitled to the benefits associated with the placement. So long as the placement exists, the parent's entitled to the benefits associated with it. The parent is entitled to stay put. Are you saying that if you have a stay put so that he's entitled to be paid, have a free, entitled to have his education at Loveland paid for, and he can't go home at night because home is on Maui, that the state is not required to pay for residential on Oahu? That is what I'm saying because, again, in 2009, when we filed, the educational placement did not include a residential component. And that's how you, when you look at stay put, you have to look at the placement when they file. As unfortunate as the result may be, the educational component does not include a residential component. Did the ALJ, did the hearing examiner ever hold that? Not in the matter of, not in the context of stay put, Your Honor. Right. Did the district court ever hold that? I don't think it was sufficiently raised in front of the district court. That it wasn't, that wasn't, that wasn't, I don't remember it being argued in court. I don't remember it being a part of her decision. Okay. So I'm a little slow here. So I think I now get the argument. You're saying that he's entitled under the stay put to the full extent of the IEP that put him there. But if the IEP that put him there does not include a residential component, end of story. He doesn't get residential component. That's the argument? I think that's part of the argument, that there was no IEP. First of all, there's no IEP that places him there. First of all. Secondly. No, wait a minute. Now I'm confused again. So there was never any IEP that ever put him at Loveland? No, none. There was an agreement three years prior to pay for Loveland. To place him at Loveland. But since that time, as we see the record, from the agreement, settlement agreement to place him at Loveland, there was an agreement to send him to Five Oaks in Texas. That was a week of bail. So characterize again for me what you call the settlement agreement that got him to Loveland. Is that, that was not an IEP? That was a settlement agreement?  And so what's the difference in terms of law between a settlement agreement and an IEP? Both of them give him, would give him the right to be at Loveland and have the State pay for Loveland. Is that right? Yes. And are you saying then that the settlement agreement that puts him at Loveland doesn't contain any residential component? Correct. That was adjudicated by the State court. And that, that was the matter that was raised to his settlement. Well, but what the State court did was to say, well, there's no requirement to pay for the residence because that included a mental health component. And because it was a mental health component rather than residential, that doesn't come under the terms of the statutes and the regulation. That was at Mana House. But you've already told us that there's no issue conclusion on that because he's no longer at Mana House. He is now doing, we're now talking straight residential rather than residential plus mental health treatment. So by your very own terms, the fact that the State court said no residential doesn't mean anything. Because the State court's decision was premised upon it being mental health. Well, in this case, Loveland is a mental health facility. What they have is a therapeutic living component, which is after school, he goes to live with one of the skills trainers. And that's what it is. Can I, this is almost surely shooting in the wind, but is there any chance that you guys could sit down with a mediator? I know you've tried it before. We may be down to a relatively constrained set of issues and monies. You know, standing, looking at it from the outside, it certainly seems that all the money that's being spent on lawyers and animosity would be nicely directed elsewhere. Is there any point in doing it again? I don't believe so, although, of course, I'd have to ask my client if there would be a minimum to such mediation. But, again, we've been on stay put for over 5 years, almost 5 years, paying a quarter of a million each year for this child. But you've already paid the stay put for the school. You're not getting that money back. And that's why I'm saying you're looking at a fairly constrained amount of money at this point. I would. And later years, I gather, are taken care of because they haven't been appealing the IAPs. So we're not talking about forever anymore. Well, we sit here today saying it's not going to be filed on. That, as the case, as we all know, there's been filings 4 years ago. I mean, 4 IAPs have been filed on. I mean, basically, this child, this family does not want to return to Maui. They want to, I mean, the circumstances are that this parent flies on the airlines and is away from home 2 weeks out of every month. She cannot, she does not want the son back because she cannot accommodate her own kid. I mean, that isn't the circumstances that require residential placement. Let me get back to one question that was gone through. Under the statute, the stay put means, doesn't it, to stay put, to keep the child in the last or in the current environment at the time the stay put is ordered. Is that right? In this current educational placement. Right. At the time the stay put goes into effect, right? Now, at the time this stay put went into effect, didn't the educational placement include a residential component? It is, in my view, it does not. Well, by agreement it included, didn't it? There was no agreement to put him in a residential facility. And it was not, it was not ordered by the court? There was no order by the court to pay for any therapeutic living residential facility at Loveland Academy. So, in your view, the original stay put did not include a stay put including a residential component? Yes, sir. And that's one legal question. Related to that is, suppose that's true, but the stay put did include, was that he'd be at Loveland Academy, which was wherever it was. Does every jot and tittle of what has to be paid for with that have to be separately in the stay put? I mean, for example, let's see if I can think of an example. I mean, suppose that the transportation change that was available. So now you need a different transportation and it was in order to stay at the same school. You'd have to be, you wouldn't be in, your position, legal position is that the related expenses don't get carried along with the stay put and have to be separately part of the original plan. So if, for example, it now costs more to take the BART train, you don't get that extra money? If there is a, we don't have a BART. I understand, but you understand the question. In other words, if the circumstances, if in order to partake of what is the stay put, one has to have other expenses. Yes. You seem to be saying that those other expenses have to have been in the, have to have been acknowledged in the IEP or settlement that's being carried forward, rather than being attached to the actual educational program, whatever they may be. So if you, in order to partake of it, you know, if the kid breaks his leg and has to take a taxi, you're not going to pay for the taxi? Is that basically what you're saying? I think it's like a case-by-case basis. I think when you talk about stay put, you talk about educational placement. And we talk about change of placement. And maybe a transportation issue isn't a change of placement that we would necessarily need to. But this isn't a change of placement. He's got to still go to school in Hawaii, Oahu, and he still lives in Maui. So none of that's changed. Sometimes those things are just dealt with case-by-case. So if circumstances change where he breaks his leg, he needs to incur additional expenses, then in consultation with the DOE, the DOE probably will say, okay, because of these circumstances, we will pay for that. Because it's not far off from what we originally agreed upon. But if it's totally changed the character of the IEP, then you can look at, I mean, it has to be agreed upon. I mean, to change placements has to be agreed upon. To change IEP has to be agreed upon. Everything has to be agreed upon, unless there's a court order mandating that change come. Okay. Well, we've taken you well over time. Thank you very much. Thank you. And we've taken the State well over time, so we'll make sure you get a chance to say what you need to say. Thank you, Your Honor. Let's put five minutes on the clock and see what happens. Thank you. The regarding the Monhouse, there's a memorandum of understanding between the Department of Education and the Department of Health.  And there was no agreement on that. It was the same hearing officer is the one that ordered the DOE to pay for the Monhouse. When they ceased paying for it in an effort to get them moving back to a walk-in, that was the case that came up for this panel. That was the 09-17-606 case. And because the case was appealed to State court, Judge Hefo overruled Mr. Young and found that because the — and this was the DOE's argument — because there was no offer of residential placement, that he's not entitled to residential care. Contrary to the ruling in Union School, which is a fact similar to this, but when a student's placement is too far to — that's too far away to make daily transportation reasonable, the state has to pay for the residential component as a related service. So under Union School, that student was placed under the placement educational setting of a day treatment program. The same thing in this matter. So what the state is saying is if there was no agreement that the state offer residential placement, which is a program that incorporates housing, and the state has to pay for that under USC 300.104, where it says if the residential program or residential placement is being offered, that the state has to pay for housing expenses. The argument I heard from the State was that the original settlement under which Marcus started going to school at Loveland did not include a residential component. Is that correct? That is correct, yes. So how do you then say that the stay-put order should include a residential component when stay-put may be understood as simply continuing not only the placement, but the agreement pursuant to which the placement is taking place? Yes. Some agreement has a contract placing him at Loveland, an agreement between the parties constitutes an agreement between the parties. That was a KD case. And so that's what happened. Just because the contract placing him at Loveland didn't include a related services doesn't mean it's not necessary. Under Union School, it was the same issue. The school refused to pay for his residential component. And the Ninth Circuit held that, you know, if transportation is unreasonable on a daily basis, you must pay for it as a related service. But was that a stay-put case? Union School, I cited that in my briefing. I'm asking whether it was a stay-put case. Yes. It was a stay-put case because they filed for due process. So he was there under stay-put. And the determination was that it was entitled to the resident to the related service. The residential component, the living component, the housing component as a related service, which is in the IEP to help benefit the student. To engage in his educational services. Residential placement is when the IEP team agrees that the student needs a 24-hour care. That is not the situation here. He was never placed in a residential setting. But because the day treatment program is at a distance that is too far to travel reasonably on a daily basis, the state's required to cover housing expenses. And so this, the state likes to call this a situation that they're not obligated to pay because there was no offer of residential placement as a educational setting. That argument is completely misplaced. It's a union school situation where it's the student was offered day treatment too far away from the home, and it requires housing as a related service under that agreement, under that scenario. So the union school, it doesn't appear to me that it was a stay-put case. Well, it had to be stay-put because the parents offered due process and they were up until the Ninth Circuit, so. Well, I understand that. But what was litigated was the appropriate placement, not what had to be paid as part of the stay-put. I'm not that familiar with the scenario of the case, but I just know that the state the family lived in L.A. and the placement was out. I understand that. And the father said he paid for the housing. Once more, that wasn't the question. Okay. Okay. Are there any further questions from the bench? Thank you.  Thank you very much. Thank you very much. Thank you both sides. Marcus, I versus Department of Education, State of Hawaii, is now submitted for decision. And if we decide to try once more mediation, we'll send an order. We'll send a judge to mediate it, some amazing person.
judges: TASHIMA, FLETCHER, BERZON